UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| VALERIE E. MCCLELLAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-cv-6 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Valerie E. McClellan, on January 19, 2018. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Valerie E. McClellan, filed an application for Disability Insurance Benefits on February 10, 2014, alleging a disability onset date of January 14, 2014. (Tr. 10). The Disability Determination Bureau denied McClellan's application initially on April 7, 2014, and again upon reconsideration on August 18, 2014. (Tr. 10). McClellan subsequently filed a timely request for a hearing on October 16, 2014. (Tr. 10). A video hearing was held on May 31, 2016, before Administrative Law Judge (ALJ) Theodore W. Grippo, and the ALJ issued an unfavorable decision on December 29, 2016. (Tr. 10-16). Vocational Expert (VE) Jacquelyn D. Schabacker appeared by telephone at the hearing. (Tr. 10). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

McClellan met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 12). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that McClellan had not engaged in substantial gainful activity since January 14, 2014, her alleged onset date. (Tr. 12).

At step two, the ALJ determined that McClellan had the following severe impairment: status post stage II left breast cancer, in remission and sequellae. (Tr. 12). The ALJ indicated that the medical evidence substantiated that McClellan's severe impairment imposed significant limitations on her ability to perform basic work-related activities for at least twelve consecutive months permitting her to proceed past step two of the evaluation process. (Tr. 12).

At step three, the ALJ concluded that McClellan did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 13). The ALJ determined that McClellan did not meet listing 13.10. (Tr. 13). The ALJ noted that since her surgery and chemotherapy, there was no reoccurrence of cancer. (Tr. 13).

After consideration of the entire record, the ALJ then assessed McClellan's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(c) except for the following limitations. She can occasionally kneel and squat.

(Tr. 13). The ALJ explained that in considering McClellan's symptoms he followed a two-step process. (Tr. 13). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce McClellan's pain or other

symptoms. (Tr. 13). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited McClellan's functioning. (Tr. 13).

McClellan alleged disability based on the symptoms from her stage two breast cancer, which was discovered in January of 2014. (Tr. 14). The cancer led to a partial mastectomy, radiation therapy, chemotherapy, and treatment with Arimidex. (Tr. 14). McClellan claimed that her physical status had not improved since her chemotherapy ended. (Tr. 14). She reported that she felt worn out, her eyes watered, and her bones ached. (Tr. 14). She also experienced headaches and lost memory. (Tr. 14). She indicated that her medication side effects included bone pain, feet pain, hip pain, dizziness, and memory loss. (Tr. 14). She estimated that she could sit for two to three hours at a time but that she could only stand for ten minutes at a time. (Tr. 14).

The ALJ determined that McClellan's medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 14). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence. (Tr. 14). The ALJ indicated that the medical evidence did not support McClellan's alleged limitations. (Tr. 14). In June of 2014, a medical note showed no muscle weakness, no bone pain, no joint pain, and no gross sensory or motor deficit. (Tr. 14). Also, her primary care provider reported in March of 2015 that she had intact memory, normal bilateral feet exams, and normal range of motion and strength in all extremities. (Tr. 14). The ALJ also noted that McClellan testified that she could wash dishes, do laundry, and complete other household chores. (Tr. 14).

After the hearing, McClellan underwent a consultative examination in June of 2016. (Tr. 14). The consultative examiner found 5/5 strength in bilateral upper and lower extremities, full

range of motion in all joints, normal deep tendon reflexes, and sensation equal and intact bilaterally. (Tr. 14). Additionally, the ALJ indicated that McClellan was able to toe and tandem walk without difficulty but was unable to perform a heel walk. (Tr. 14-15). The consultative examiner indicated that McClellan had no memory difficulty or dizziness during the examination. (Tr. 15).

Because of the thoroughness of the examination, the ALJ assigned great weight to the opinion of the consultative examiner. (Tr. 15). The ALJ assigned limited weight to the opinion of McClellan's treating physician, Dr. Vijaya Kakani, M.D. (Tr. 15). The ALJ noted that Dr. Kakani's treating notes primarily identified symptoms rather than limitations. (Tr. 15). Finally, the ALJ assigned limited weight to the State agency medical consultants, who found that McClellan's impairments did not meet the durational requirement to be severe. (Tr. 15).

At step four, the ALJ determined that McClellan was able to perform her past relevant work as an accounting clerk, as normally performed. (Tr. 15). The ALJ found that her past relevant work did not require the performance of work-related activities precluded by her RFC. (Tr. 15). The consultative examination occurred after the hearing, therefore, the VE did not testify regarding McClellan's ability to perform any past work. (Tr. 16). The ALJ found that McClellan had not been under a disability, as defined in the Social Security Act, from January 14, 2014, through the date of this decision, December 29, 2016. (Tr. 16).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive.");

4

*Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see*

5

*Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)**.

McClellan has requested that the court reverse the ALJ's decision and remand this matter for additional proceedings. In her appeal, McClellan has argued that: (1) the ALJ erred in evaluating listing 13.10, breast cancer; and (2) the ALJ erred in evaluating the RFC.

McClellan has argued that the ALJ failed to properly evaluate if she met listing 13.10, breast cancer. McClellan has claimed that the ALJ performed an inadequate, perfunctory analysis and therefore this matter requires remand. She contends that no medical expert advised the ALJ on the applicable listing or whether there could be a meeting or an equaling of any of the cancer listings for the required one-year period or beyond.

McClellan was diagnosed with invasive ductal carcinoma, ER/PR positive, HER/reu positive by biopsy at IU White Memorial Hospital in December of 2013. (Tr. 265). She had a

partial mastectomy on January 14, 2014, followed by radiation therapy through February 17, 2014. (Tr. 265). After radiation she began chemotherapy. (Tr. 265).

Listing 13.00 is applicable to "all cancers (malignant neoplastic diseases)," and is further divided into individual listings, which provide the applicable criteria for consideration based on the cancer's site of origin. **20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 13.00.** Listing 13.10 provides the relevant criteria for breast cancer and is met if the cancer is: (A) "[l]ocally advanced"; (B) "[c]arcinoma with metastases to the supraclavicular or infraclavicular nodes, to 10 or more axillary nodes, or with distant metastases"; (C) "[r]ecurrent"; (D) "[s]mall-cell (oat cell) carcinoma"; or (E) results in secondary lymphedema caused by anti-cancer therapy and requires surgery. **20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 13.10.**

For a claimant to show that she meets a listed impairment, she must demonstrate that her impairment meets each required criterion, and she bears the burden of proof in showing that her condition qualifies. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). A condition that meets only some of the required medical criteria, "no matter how severely," will not qualify as meeting a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). The Seventh Circuit has not required a lengthy articulation at step three. *Wurst v. Colvin*, 520 F. App'x 485, 488 (7th Cir. 2013) ("The ALJ's [one-sentence] analysis here was cursory, but it was nevertheless supported by substantial evidence that Wurst could ambulate effectively."). However, "in considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015). "[A] failure to do so . . . may require a remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

McClellan asserts that the ALJ's determination that she did not meet listing 13.10 required a medical opinion. The State agency medical consultants specifically considered listing 13.10. (Tr. 61, 69). However, they had completed their evaluations months before McClellan had completed her chemotherapy. Therefore, McClellan has argued that the ALJ may not rely on the State agency consultants outdated assessments when later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing consultants' opinions.

The State agency consultants completed Disability Determination and Transmittal forms. (Tr. 57, 64). The Seventh Circuit has explained that Disability Determination and Transmittal forms "conclusively establish that consideration by a physician designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." **Scheck v. Barnhart**, 357 F.3d 697, 700 (7th Cir. 2004); *see also* **Cirelli v. Astrue**, 751 F. Supp. 2d 991, 1003 (N.D. Ill. 2010) (describing Scheck's discussion with regard to Disability Determination and Transmittal forms in the record as indicative of the Commissioner's consideration of medical equivalence a "safe haven"). An ALJ may properly rely upon those experts' opinions, and such opinions in the record provide substantial evidence to support the ALJ's finding that a claimant does not meet or equal a listing. **Scheck**, 357 F.3d at 700.

The ALJ gave limited weight to the State agency consultants because they determined that McClellan's impairments did not meet the durational requirement to be severe. (Tr. 15). The ALJ indicated that the medical evidence available since the State agency consultants made their determination was more beneficial in establishing the severity of McClellan's impairments. (Tr. 15). The court recognizes, and as indicated by the ALJ, that the State agency consultants'

8

determinations were made prior to the completion of McClellan's chemotherapy treatment and were not indicative of her current functional capacity. (Tr. 15).

However, McClellan has not pointed to any new evidence that may have changed the State agency consultants' findings that her impairment was not presumptively disabling at step three. *See* **SSR 96-6p,** 1996 WL 374180 at *3-4. When a claimant does not offer an opinion on medical equivalence or request the ALJ to recontact the state-agency consultants, particularly when she is represented by counsel, it is appropriate to infer that she "decided that another expert opinion would not help her." ***Buckhanon ex rel. J.H.***, 368 F. App'x 674, 679 (7th Cir. 2010). Such an inference may be drawn in this case since McClellan was represented by counsel, yet counsel did not present an opinion on medical equivalence from any treating providers or request that the ALJ recontact the State agency consultants. The claimant has the burden to present medical findings that match or equal in severity all the criteria specified by a listing. ***Sullivan v. Zebley,*** 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); ***Ribaudo v. Barnhart,*** 458 F.3d 580, 583 (7th Cir. 2006).

Additionally, the ALJ when evaluating cancer must consider the "[d]uration, frequency, and response to anticancer therapy." **20 C.F.R. Part 404, Subpart P, Appendix 1 § 13.00B.** The ALJ is required to analyze the effects of the cancer treatment, not just the disease itself, in determining the severity of the impairment, and that the effects of therapy may be considered disabling on their own. **20 C.F.R. Part 404, Subpart P, Appendix 1 § 13.00G.** The ALJ's step three finding was brief, however, when considered in combination with his analysis of McClellan's RFC, the ALJ met his "duty to articulate." ***Curvin v. Colvin***, 778 F.3d 645, 650 (7th Cir. 2015) ("The ALJ provided the discussion of Curvin's severe and non-severe impairments, the objective medical evidence, and her credibility directly after step 3 when he

determined her RFC. This discussion provides the necessary detail to review the ALJ's step 3 determination in a meaningful way."); **Summers v. Colvin**, 634 F. App'x 590, 593 (7th Cir. 2016) (noting that although the ALJ's initial Step 3 discussion was brief, "we read the ALJ's decision as a whole and later the ALJ addressed [the claimant's] evidence more thoroughly and explained why the record did not establish the criteria required to satisfy Listing 1.04"). The ALJ considered McClellan's testimony, her daily living activities, the medical evidence, and the opinion evidence in considering her severe impairment and the effects of her cancer treatment on her ability to work.

The criteria for listing 13.10 includes specific kinds or complications of breast cancer. McClellan has not identified which criteria of listing 13.10 her breast cancer likely met. She also has argued that the State agency consultants did not review the evidence of her chemotherapy treatment. Yet, the plain language of listing 13.10 does not suggest that undergoing chemotherapy would have changed the consultants' medical determination. Also, as noted by the ALJ, McClellan's treating physician, Dr. Kakani, did not provide an opinion on the frequency or the severity of McClellan's symptoms or whether those symptoms had any limiting effect on her functional capacity. Therefore, without a medical opinion to the contrary she did not present evidence supporting that her impairments met or equaled a listing.

Accordingly, the ALJ was not required to obtain an updated medical expert's opinion. It is for the ALJ to determine whether it is necessary to obtain a new medical opinion about medical equivalence and to determine whether any new evidence might change the State agency consultants' opinions on equivalence. *See* **SSR 96-6p,** 1996 WL 374180 at *9-10. Although the ALJ summarized his step three analysis in a few sentences, his reasoning was not perfunctory or inadequate. Also, considering that McClellan has not cited to any medical evidence in the

record establishing that her impairment met or equaled a listing, the court upholds the ALJ's step three determination.

Next, McClellan has argued that the ALJ erred in evaluating her RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence— including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

An ALJ is not required to rely solely on medical opinions to determine the RFC. *Suide v. Astrue,* 371 F. App'x 684, 690 (7th Cir. 2010) (finding that the rejection of the opinion record left an evidentiary deficit because the rest of the record did "not support the parameters included in the ALJ's residual functional capacity determination"); *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians). The final responsibility for deciding a claimant's specific work-related or RFC limitations is reserved to the ALJ. *See* **20 C.F.R. § 404.1527(e)(2)**.

The ALJ found that McClellan had the RFC to perform sedentary work except that she could only occasionally kneel and squat. (Tr. 13). McClellan has argued that the ALJ erred by failing to consider the severity of her side effects from chemotherapy and the degree to which it

would interfere with her ability to work. McClellan was diagnosed with an invasive ductal carcinoma in January of 2014. (Tr. 230). She underwent radiation treatment from January 20, 2014 through January 24, 2014. (Tr. 271). She then underwent six cycles of chemotherapy beginning on February of 2014 and ending on June of 2014. (Tr. 412, 418–27). She complained of bone pains and diarrhea, but the record generally noted that she had "expected side effects" (Tr. 265, 267, 421–23). After chemotherapy, McClellan was treated with intravenous Herceptin every three weeks. (Tr. 415–18, 478–89).

The Commissioner acknowledged that the ALJ's RFC assessment did not specifically differentiate between McClellan's condition during the time period she was undergoing chemotherapy and the rest of the period under consideration. However, that error was harmless. McClellan underwent six cycles of chemotherapy beginning on February 17, 2014, and ending on June 2, 2014 (Tr. 412, 265–71, 418–27). She showed exacerbations in her symptoms during her chemotherapy from February of 2014 to June of 2014. However, the ALJ has supported the RFC with substantial evidence.

McClellan has argued that the ALJ relied on his own lay opinion in determining that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence. She asserts that there was no medical evidence contradicting her testimony about her day to day illness either when she was undergoing chemotherapy or during ongoing care. She testified that her physical status had not improved since her chemotherapy ended. (Tr. 14). She also stated that she felt worn out, her eyes watered, her bones ached, she had headaches, and lost memory. (Tr. 14). She complained of pain in her hips, and that she could sit for two to three hours at a time and that she only could stand for ten minutes at a time. (Tr. 14).

However, despite her testimony the ALJ noted that in June of 2014 a medical note showed that she had no muscle weakness, no bone pain, no joint pain, and no gross sensory or motor deficit. (Tr. 14). Also, her primary care provider reported that in March of 2015 McClellan had intact memory, normal bilateral feet exams, and normal range of motion and strength in all extremities. (Tr. 14). After the hearing, McClellan also underwent a consultative examination in June of 2016, where the examiner found 5/5 strength in bilateral upper and lower extremities, full range of motion in all joints, normal deep tendon reflexes, and sensation equal and intact bilaterally. (Tr. 14). Additionally, the consultative examiner found that McClellan had no memory difficulty or dizziness during the examination. (Tr. 15).

The ALJ considered McClellan's subjective complaints but noted that the evidence of record did not support her degree of symptomatology. McClellan has not shown that the ALJ's subjective symptom analysis was patently wrong. Additionally, the ALJ also considered the medical opinion from McClellan's treating physician, Dr. Kakani. However, Dr. Kakani did not provide any information on the frequency or the severity of McClellan's symptoms or whether her symptoms had a limiting effect on her functional capacity. Accordingly, McClellan has not cited a medical opinion that suggested that a more restrictive RFC was necessary. The expression of a claimant's symptoms and medical source opinions is sufficient for the RFC assessment. ***Knox v. Astrue,*** 327 F. App'x 652, 657 (7th Cir. 2009). The ALJ met this standard by thoroughly considering the medical evidence and the opinions of record.

McClellan has not shown any evidence the ALJ failed to consider that would have changed the RFC assessment. The ALJ discussion of the evidence creates the requisite evidentiary support and logical basis that is necessary for the court to uphold the ALJ's

determination.  *See* **Golembiewski v. Barnhart,** 322 F.3d 912, 915 (7th Cir. 2003).  Therefore, the ALJ has relied on substantial evidence to support his RFC finding.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED.**

ENTERED this 28th day of March, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge